Memoranda, drafted by that same regional office in 2003. Both memos reflect bias on the part of the regional office. So I guess your argument is that this individual who we know almost as Mark, right? That's right. And Ms. Treanor were biased against your client, correct? That's correct. But what basis do we have to say that we're biased? I mean, there's no indication of any animosity towards Mr. Rauch. I guess what I'm saying is what is the basis for bias or prejudice? There's no suggestion of racial bias, gender bias. How is there any indication of any kind of bias at all? Your Honor, we think that the two memos speak for themselves. If you look at the record, this court will look at the record and examine the memos. It is evident from the memos that there are certain choices made that reflect bias on the part of the regional office. Well, maybe someone writes a memo and they make the wrong decision. Something may be put in that shouldn't be in or left out that shouldn't be left out. But why can't it just be a mistake or an oversight or a choice not motivated by any field of thinking? I think that certainly is possible, and I think in some circumstances that would be possible. I think the situation here, though, I think the facts are so compelling that, as a matter of law, this court should conclude that there is bias. In particular, the facts that we're talking about are two facts that, taken together, I think substantiate Mr. Rao's claim. There was a medical examination by a VA doctor in 1998, so well before the memos were written in 2003, by Dr. Rick Lamb. And he concluded that if Mr. Rao had been exposed to oil smoke fires while in the Gulf, that there should be a service connection for his respiratory disease. And then, in the record, there is a letter from 1999 from Mr. Rao's commanding officer verifying that he was exposed and Mr. Rao was exposed to oil smoke fires while in the Gulf. I think those two facts taken together, and as the BVA itself noted in its decision, those two facts taken together provide a compelling case. In fact, I think they effectively are dispositive of Mr. Rao's claim. Well, if your argument is that those two facts dispose of Mr. Rao's claim on the merits, then you don't have any business being up before us because we don't have any jurisdiction to review those facts on the merits. Why do you think we have jurisdiction over what it is that's troubling you, which is the allegations of bias? Let me focus the issue a little more. At what point and in what document did you plead bias as an independent issue, independent of the merits of whether the doctors were right or wrong in concluding whether his illness was from the smoke or from his obesity or whatever? Bias was raised, I believe, before the Veterans Court. Don't tell me you believe. I want to know correctly. I can't tell from the documents in front of me exactly where and when I need your help on that. Sure. Bias was raised before the Veterans Court. If this Court were to read the Veterans Court opinion, it addresses two issues. One, whether the- I read the Veterans Court opinion. What I want to know is where did you plead bias? In what document did you allege an independent claim of bias? Where did that ever come up? Because without that, we don't have any jurisdiction. That's correct. We can't deal with the merits. We can't deal with the merits whether the doctors were right or wrong. Right, which is not what we contend. We don't put that issue before this Court. So where and when did you put the issue of bias before some decision maker in the chain of command that we're dealing with? It was raised in the papers before the Veterans Court. Do we have that document? It's not, I think, attached to the briefs, but it's probably part of the record that it should be sent before this Court. So that's where the issue first came up. Obviously, it would not have come up before the regional office, because we're claiming that it is the regional office that is biased. The reason why this Court has jurisdiction is because, as this Court itself has recognized and the Supreme Court has recognized several times, an impartial decision maker is fundamental to constitutional due process. In our contention here, for this Court, obviously we believe that the merits were wrong inside. Who was the non-impartial decision maker in this case? Who was the biased decision maker specifically? What was that person? If we were to name a specific individual, it would have to be Melody Traynor and possibly Mark. But Melody Traynor is the individual at the regional office who both wrote one of these memos, and it appears from the documents that she supervised this individual Mark, whose last name we don't know. And it also is clear from the supplemental statement of the case that is in the record that Ms. Traynor is the one who actually made the decision. Her signature is at the end of the supplemental statement. How do you distinguish that decision at the regional office level from the fact that there was medical evidence on both sides? That there was medical evidence that you mentioned, and there was medical evidence against the veteran. You really need to show us to say that this is a constitutional question of due process, so you have to go back and do it again. But this is something other than weighing the evidence to decide which physician or set of physicians to follow. Do you agree with that? I think if I understand you correctly, Your Honor, I would agree that if our contention were simply that the weighing of the evidence were incorrect, that wouldn't necessarily present a constitutional issue. That would be a contention that the merits were wrong inside it. But our assertion here is not that the medical evidence was weighed incorrectly, but that the two memos written by the regional office... Well, only one was written by Ms. Traynor. That's right, but... But you're alleging Ms. Traynor is the biased person, or you're also alleging the person named Mark was biased, but he didn't make any decisions. No, but I think the regional office would have to be treated as an entity, and not necessarily... I mean, the regional office is ultimately the decision-maker. Well, somebody... the regional office is no more a decision-maker than the government is a decision-maker. If somebody makes a decision, there are people who are involved. It would be hard to say the government is biased. You can say Mr. X is biased, Mr. Smith is biased, but I don't know how you can say that the regional office is biased. Let's assume for the moment it's Ms. Traynor. The only evidence in the record regarding Ms. Traynor's bias is the memo of October 2003, is that correct? That's correct. And the opening sentence of that memo is, review of the record indicates no respiratory symptoms until 1092 at the very earliest for a veteran complaining of chest pain. Is that the basis for an allegation of bias? Is that not factually correct? That is factually correct, and there's also, before that, the factual statement that the veteran claims he was exposed to sarin gas. However, this exposure has been ruled out by MS. The following is, SOB, I don't think that was a personal comment. No, I think it's short of surprise. Yeah, I think so. Short of surprise. SOB was denied at that time. That's factually correct, too. He was ultimately diagnosed with sleep at the end of July 1994. That also is factually correct. It appears veterans' COPD diagnosis came sometime after this date. All of that's factually correct, right? That's correct. We don't deny this fact. Then the very next sentence is, after your review of the pertinent records, please provide an opinion as to the following. And then Ms. Treanor asked three questions, or four questions. I don't want to take up your time reading them. Sure. Is there something in the way she asked those questions that's troubling? No, there's nothing in the way she asked the questions that's troubling. What is the evidence of Ms. Treanor's bias? That's really all I need to understand. What we believe the evidence of Ms. Treanor's bias is we're not denying that she has the right or perhaps even the need to include facts in these memorandums. But our contention is that the choices that she made when she wrote this memorandum and what happened here in this memorandum is some of these facts are, we believe, objectively negative, indisputably negative. There's the assertion that the veteran claims he was exposed to sarin gas, but that's been ruled out. There's an implication there that he has somehow claimed something that's not true. That's evidential. Isn't that correct? That's correct. It was ruled out because there's no evidence. Right. But our contention is that she's chosen here in a context where Congress has mandated that the thumb should be put on the scale in favor of the veterans when the evidence is in relative equipoise that the benefit of the doubt goes to the veterans. We're dealing with that context. So what kind of a bias do you say it was? I mean, there's racial bias, there's ethnic bias, there's gender bias, there's bias against older people. What kind of bias do you say there was? I'm not sure that the case law demands that we identify what particular type of bias it is. But if you say there's bias in order to have a claim that makes us think, okay, there's a valid constitutional claim, I would think there would have to be some indication of the kind of bias. Has Ms. Traynor ever met Mr. Brown? I mean, what is the nature of – I mean, what do you say was her prejudice? Was it one of the things I mentioned or that she didn't like certain types of claims? I mean, there's no indication of the nature of the bias. That's what concerns me a little bit. And that suggests that maybe there isn't a real bias. What is the type of bias you're complaining about? I'm just not sure that the law demands that we identify the type of bias, that there has to be necessarily a racial element to it or an age element to it. I'm not saying that, but what bias suggests some pre-judgment or disposition against? What kind of a disposition against do you see here? I mean, I think the answer to that is that it may just be an inexplicable bias against Mr. Rao. Perhaps she doesn't believe him. Perhaps she thinks that he's just trying to game the system. And the case law does establish that there are situations where even when the bias, the judicial bias, the decision-maker's bias is based on opinions derived from the actual proceedings, that that could also be enough. And there's the case – I think it's the United States v. Litigate Supreme Court case. And it says that it doesn't have to be extrajudicial. There doesn't have to be an outside reason. If there are opinions or statements in the case – and here we think that there's this memoranda that reflects, that evidences the bias – if there are opinions or statements in the case that show that the decision-maker being capable of making a fair decision – His decision was a hostility on her part to his claim. That's what you would call bias, not the type of bias we think of as in the Title VII sense. That's right. And we're suggesting that it rises to the level of constitutional bias. Do you have any – Mr. Lynn, I'm sure you can see the Court is struggling with this because we believe, as you do, that every person, including a veteran, is entitled to a fair and dispassionate decision as a complaint. Is there any other evidence that you have unearthed that suggests that this trainer or this particular regional office had a predisposition against awarding claims to eligible veterans? Because that seems to be the nature of the bias that you and my colleague sort of developed was a kind of generalized bias against awards, I guess. Is there anything else in your work in this case that helps show that? Any data, statistics, or anything? Let me start by saying that I'm not – I don't think it would necessarily be a generalized bias against awarding claims. It could be a bias personally against Mr. Rao's claim. But no, we have not unearthed anything beyond these memoranda. But again, I would emphasize that there were facts that, taken together, would have substantiated Mr. Rao's claim. And the meddling trainer, instead of – not only did not include those facts in a situation where she has a caretaking responsibility, it's a paternalistic system. Not only did she not include those facts, at least point them out, she then included negative facts, facts that would imply that Mr. Rao perhaps wasn't telling the truth, facts that would imply that he didn't experience any symptoms until a year later, that perhaps he had made this claim up. So that's what we think ultimately where – what evidence is the bias. Thank you. Thank you, and may it please the Court. The Court should dismiss for lack of jurisdiction because Mr. Rao does not raise any freestanding constitutional claim in which this Court possesses jurisdiction. He raises a claim of bias. Is that a freestanding constitutional right that you're entitled to an unbiased decision-maker when it comes to the right to a government award that is provided for by statute? No, not necessarily, Your Honor. The freestanding constitutional claim tests, if you will, Helfer and Vanley and this Court's decision in Arneson teaches that it's not merely a pleading standard. It's not enough for the claimant to simply say, there was bias, that's constitutional in nature, therefore the Court has jurisdiction. If it were simply a pleading standard, then claimants could cloak a run-of-the-mill challenge to application of law to fact or challenge to a factual finding, cloak that in constitutional garb, and have this Court exercise jurisdiction. So you're suggesting every negative decision would be blamed on bias as a decision-maker? It's a possibility, yes, Your Honor. We wouldn't want that. Yes, Your Honor. We'd end up deciding all the veterans' cases, I see. I hear you saying that if it's a pleading, this Court has no right to review whether, in fact, it is a constitutional issue? No, I'm not sure I'm precisely understanding your question. But is that true for truth and disclosure? You're saying that the Court has no authority when the constitutional issue is in the pleading, no authority to determine whether, in fact, there was a basis for the constitutional charge? No, Your Honor. What we're saying is that the Court has to look beyond merely the pleading and examine what the heart of the claimant's claim truly is. But that's why we're here. You said it should be dismissed. Yes, Your Honor. In order for us to look at the heart of the claim, we have to take into account the evidence. No, Your Honor. Not at all. Looking at the claim that Mr. Rauch has asserted here, he says two R.O. individuals were biased against him, and as a result, there was a doctor's opinion that was afforded too much weight, that Dr. Lohnan's opinion that came from Melody Trainor's request was given more weight than that 1998 opinion from Dr. Lamb, and that that's how he was harmed here. Isn't that a well-pleaded allegation of bias? No, Your Honor. Ultimately, the agency decision, the final agency decision, is the Board's decision. And in this case, the R.O. official, Melody Trainor, did not make the final decision that is under review now by the Veterans Court and possibly by this Court. The Board's decision is the final agency decision. And Mr. Rauch has not claimed any bias on the part of the Board. He has not claimed that Melody Trainor's alleged bias in any way infected the Board decision-maker's claim. He's not alleged, for example, that this- The contention, as I understand it, is that some kind of sub-syllable, if you will, or subliminally, a message was sent by Ms. Trainor to Dr. Lohnan? Yes, Your Honor. It was sent to Dr. Lohnan. He doesn't contend-I mean, Dr. Lohnan gave the opinion, which was determinative in this case, as I understand it. And I guess the contention, Mr. Lynn's contention, is that no indication of bias on his part, but rather information was kind of filtered for him or presented to him through a particular lens, and that resulted in his decision. I think that seems to be the basis of his claim of bias, or the evidence of it, if you will. Yes, Your Honor. However, even if-let's assume that Mr. Rauch is right and that Melody Trainor was biased against him, which of course we all concede, that still does not necessarily rise to the level of a due process violation. Just because one person in the RO may have been biased against Mr. Rauch does not necessarily meet that constitutional line of a due process violation. Where does the cure lie for such a subsequent view of bias if it existed? How does that get cured unless we cure it? Well, in this case, it was cured by the board. The board had before it the complete file, the complete claims file, all of the competing doctors' opinions, and the board specifically mentioned the proclaimant evidence that Mr. Rauch's complaint was not included in that initial memo that Ms. Trainor wrote. So the board looked at all of those facts, weighed them anew, DeNovo, and found that Dr. Lowen's opinion was entitled to more weight and made its decision on the merits there. The Supreme Court- Is that your basis for saying that there's no jurisdiction in this court to review it, that the board presumably gave a DeNovo review accepting, that's accept for the purpose of this review, that there was bias in the regional office? Yes, Your Honor, that is at least one of the reasons. How would you know that unless we take jurisdiction individually? How is the court to know that the board- ignored the bias coming to it from the regional office? Well, we have- Mr. Rauch, first of all, doesn't claim otherwise. He's not alleged that- That wasn't my question. The board- I'm trying to understand their position that we shouldn't do that. Right. Well, in making the decision whether there is a freestanding constitutional claim, the court is not barred from considering the facts that's found below or at least viewing the allegations in the context of the entire case as it is presented. In Arneson, for example, the court analyzed Mr. Arneson's claim that various factual matters which he raised had been ignored by the board and by the veterans court. This court said the record clearly showed in the board opinion and the veterans court opinion that this particular evidence had been considered. And then, in the end, cited Helfer and said appellate issues entirely factual were inappropriately characterized as constitutional, which, of course, helped with that freestanding constitutional claim. Well, to answer the more directly presiding judge's question, I think basically what you're saying, Mr. Miller, is this court has two ways of disposing of this case. Either way, we have to look at the case. One way is we could look at the case and we could say, well, this is all very interesting and there are allegations of bias and there may have been some bias on the part of Mr. Miller, this traitor. But if there was a touch here in the board's decision, then the record seems to be pretty clear. And therefore, we can dismiss this as a lack of jurisdiction because there is no showing of a constitutional bias claim. I take it that's basically your position. Or the alternative is we can take jurisdiction, look at the same set of facts and issues, and I assume you would then say on the merits there is no showing of bias, so we could then give judgment to the government on the merits. Does that sort of where you are? And that's a flip of the coin for us. I would agree with the second part. Either way, we have to look at the case, though. Not in the same way. No, you're on. I agree with the second part of your question, that being on the merits of the bias claim itself. But looking at the jurisdictional issue, the first part of your question, does not need to involve as detailed a review on the merits. It's not the same. It doesn't have to be the same kind of review on the merits as the court would entertain when actually looking at the claim on the merits. An analogy can be drawn to the colorable constitutional claim standard that a lot of the regional circuits use in many cases. In particular, they use it in appeals from immigration judges, and the court's appeals there are bound by a very similar jurisdictional statute. And they routinely say the question is whether there's some possible validity to this claim. It's a freestanding constitutional claim if it could have violated due process. But as Mr. Rausch alleges it here, he does not dispute that... You're saying there's no alternative claim. It's an analogy. Yes, although it's more than just the simple assigning the biased word to it. That's not simply enough. It has to go deeper than that. Well, the well-tweaked complaint is using the word biased. Yes, Your Honor. And so here where the claim is a particular RO individual did not highlight particular pro-claimant facts, but as Mr. Rausch concedes, gave undisputed facts, unbiased questions, and he's made no allegations. He didn't hear him concede that they were unbiased? Excuse me, Your Honor? He didn't hear counsel concede that the questions were unbiased? When I say unbiased, I mean that they were unbiased. They were even-handed. When counsel was asked about the four questions at the end of Ms. Treanor's memo, counsel did not indicate that there was any problem with those questions. So he has conceded that the questions themselves at the bottom of the memo were posed in an unbiased fashion. His argument is with the preceding factual information that comes before those questions, and this is all before even the entire memo included the questions. His complaint was that certain things were left out that should have been there. He doesn't quarrel with the factual information that was present. He says there should have been additional information, as I understand the case is, whether that has merit or not, but that seems to be his contention. I guess what you're saying, Mr. Lewis, is that we only have jurisdiction to consider true freestanding constitutional claim that is set out in the case, correct? Yes, Your Honor. But we obviously have authority to determine whether such a claim has been presented to us. Of course, Your Honor. That's what you're saying. Yes, and the Supreme Court- That's a less difficult question than the one on the grounds of whether there was bias. In this case, yes it is, Your Honor. The Supreme Court explained in Withrow that the type of bias that raises a constitutional concern is when there's been a sufficient allegation that the decision-maker has prejudged the claim or the risk of unfairness is intolerably high. And we simply don't have any kinds of facts alleged that would rise to that level here, particularly, again, coming back to the fact that the final agency decision-maker here was the board judge, against whom no allegations of bias are made. Mr. Roche doesn't even allege that the board was somehow prevented from getting particular evidence by Ms. Tran. So is your theory that there is a very high barrier to even in the pleadings for a constitutional claim on that when the Constitution is an issue, there should be a low barrier before the question is brought to the court? I don't want to avoid answering your question, but I don't know that we'd be ready to stake out a position whether it's always high or always low. Certainly, with a bias claim, bias on the part of an RO adjudicator, that is going to be a higher level. Now, if Mr. Roche's claim- Why is it a higher level than some other constitution? Let's say it's a process claim. Let's say he said that the duty to insist was not exercised. Let's say that the burden of doubt, the burden of prudence, and the doubt in favor of the claimant was not resolved in his favor. These are not constitutional questions, but in order to bring them before the court, in fact, those burdens on the document must be met. Yes, Your Honor, and perhaps I misunderstood the question of high or low. I mean, the standard for making a freestanding constitutional claim is the same in every kind of case. My point was merely that the case is explaining what type of bias rises to the level of a constitutional violation and indicate that it's not simply that one person along the line may not have liked you. How does one know in terms of looking into it? That's what I'm really trying to understand and need to generalize for all cases, because it's limited to this case. Okay. How does one know in terms of looking into it whether there may have been bias and whether it may have been prejudicial to the defendant? Well, in this case, we can say that you can even assume that Ms. Bock, Ms. Traynor, was biased against Mr. Rauch's claim, but because then the complete record, all of the facts went before the board, and the board did its own searching scrutiny of the evidence and its own de novo review to reach a new decision. So you don't know that until we look into all the proceedings before the board, which I don't exclude you to say we have the authority to do that. Well, I believe that the fact that Mr. Rauch has not alleged any bias on the part of the board, any failure on the board. I wasn't talking about what is alleged. I want to know what the government's position is. Well, the court can look at the board's opinion in deciding whether the case presents a freestanding constitutional claim. I think that's exactly what the court did in Arneson before citing Helfer and saying that it did not present that. I take it you're not challenging the question of whether there is such a thing as a freestanding constitutional question. I raise that. I want to know if you're trying to get Judge Schall over. No, I think it's settled at this point that there is a freestanding constitutional claim. Okay. Any more questions? Any more questions? Thank you, Your Honor. Your Honor, on the jurisdictional question, I'll be brief. I think if this court were to look at the cases failing Helfer, it's clear that as a jurisdictional question, you need to be careful of prejudging the case and allowing the jurisdictional question to collapse into the substantive issue. I think in bailing out Helfer, there is certainly some analysis to determine whether it's actually a merits challenge or an assertion of a real constitutional claim. But the inquiry was not, I think, any deeper than that. On the question of whether the board's de novo review can cure any bias, that is, in effect, I think, in actuality, a harmless error argument, that any bias on the part of Melody Traynor, the original decision-maker, is cured or somehow not prejudicial because the board itself engages in de novo review. But this court, and this is admittedly an unpublished decision, so I've decided it only persuades authority. But in TNLA v. EPA, and I can give you that site if you need it, it's Federal Appendix 971, there was an individual who had appealed to the full MSPB for the decision of an individual judge. And in that case, the individual claimed that the individual judge was biased. The contention by the government was that the independent review of the full board rendered that any bias harmless. This court, noting the Supreme Court's decision in Chapman v. California, recognized that judicial bias, or bias on the part of a decision-maker, is so fundamental an error that harmless error analysis does not apply and pointed out that this court had to reach the merits of the bias question. So, unless this court has any further questions, thank you. Thank you.